UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-cv-23425-ALTMAN

**OUTSOURCING MANAGEMENT LTD.**,

    *Plaintiff*,

v.

**MY GOALS SOLUTIONS INC.**,

    *Defendant*.
_____/

## ORDER GRANTING MOTION TO VACATE DEFAULT JUDGMENT

On October 23, 2024, we entered final default judgment against the Defendant, My Goals Solutions, Inc. ("MGS"). *See* Final Judgment [ECF No. 18]. MGS had "failed to appear, answer, or otherwise respond to the Plaintiff's Amended Complaint[,]" Order Granting Motion for Final Default Judgment [ECF No. 17] at 1, and our Plaintiff (Outsourcing Management) had sufficiently alleged "that there was a valid contract between it and MGS, that MGS materially breached that contract, and that the breach caused Outsourcing Management to suffer $432,783 in damages (as of September 11, 2024)," *id.* at 4.

Seven days after we entered our final judgment, on October 30, 2024, counsel for MGS finally appeared. *See* Notice of Appearance [ECF No. 19]. MGS then filed this Motion to Vacate Default on November 4, 2024. *See* Motion to Vacate [ECF No. 22]. MGS alleges that its failure to timely appear in this case "was the result of excusable neglect" because it was "unaware that this lawsuit was even filed until October 20, 2024[,] as [MGS's] registered agent mailed a copy of the pleadings to a prior address where an unknown third-party signed for the documents." *Id.* at 4. Outsourcing Management filed a Response to the Motion [ECF No. 25], and MGS submitted a Reply to that Response [ECF No. 26]. After careful review, we now **GRANT** the Motion to Vacate.

## THE LAW

"Rule 60(b) allows a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances including fraud, mistake, and newly discovered evidence." *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). "Rule 60(b) 'is an extraordinary remedy which may be invoked only upon a showing of exceptional circumstances.'" *Tucker v. Commonwealth Land Title Ins. Co.*, 800 F.2d 1054, 1056 (11th Cir. 1986) (alteration in original) (quoting *Griffin v. Swim Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)). Rule 60(b) requires the moving party to "demonstrate a justification for relief so compelling that the district court [is] required to grant [the] motion." *Maradiaga v. United States*, 679 F.3d 1286, 1291 (11th Cir. 2012) (cleaned up). Because "Rule 60(b) motions are directed to the sound discretion of the district court," the Eleventh Circuit "will set aside the denial of relief from such motion only for abuse of that discretion." *Conn. State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355 (11th Cir. 2009) (cleaned up).

"[T]he court may relieve a party . . . from a final judgment" in one of six enumerated circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b)(1)–(6). In our case, MGS seeks vacatur of our final judgment based solely on Rule 60(b)(1)'s "excusable neglect" exception. *See* Motion to Vacate at 6 ("[D]efault judgement should

2

be vacated as Defendants failure to file a responsive pleading was a result of excusable neglect[.]"). Excusable neglect "is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993). "The determination of what constitutes excusable neglect is generally an equitable one, taking into account the totality of circumstances surrounding the party's omission." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007). The Eleventh Circuit has adopted a three-part test to help us determine whether the defaulting party has established "excusable neglect" under Rule 60(b)(1): "(1) [the defaulting party] had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *In re Worldwide Web Sys., Inc.*, 328 F.3d 1291, 1295 (11th Cir. 2003) (quoting *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993)).

## ANALYSIS

We'll start by asking whether MGS had "a good reason . . . for failing to reply to the complaint." *Ibid.* MGS explains that it "did not know the suit existed, and the reason for the delay was not within Defendants' control as an unknown, uncontrolled third-party took possession of Plaintiffs' pleadings and did not notify Defendants of the same." Motion to Vacate at 7–8. The full details of this story are laid out in a declaration authored by Joshua M. Lurie, "counsel for [MGS] since its creation in 2018." Declaration of Joshua M. Lurie ("Lurie Decl.") [ECF No. 22-1] ¶ 2.

Lurie and MGS concede that MGS was properly served on September 17, 2024, when "a copy of the summons and complaint [was received by] Defendants' registered agent, Corporation Service Company at 1201 Hays Street, Tallahassee, FL 32301." Motion to Vacate at 5; *see also* Executed Summons [ECF No. 8] at 1. "Corporation Service Company thereafter mailed a copy of the summons and complaint to Defendants' general counsel's *previous office* located at 15 Warren Street, Suite 36, Hackensack, NJ 07601 where a third-party signed for the documents and did not notify Defendants

3

of its receipt." Motion to Vacate at 5 (emphasis added); *see also* Lurie Decl. ¶ 3 ("From August of 2018 until August 31, 2024, my office was located at 15 Warren Street, Hackensack, New Jersey 07601. Effective September 1, 2024, my office location has been 411 Hackensack Avenue, 6th Floor, in the same municipality.").[1] Lurie had visited his former office on September 15, 2024, "to remove a few other items and see if there had been any mail that was delivered and not forwarded[,]" but had not been back since. Lurie Decl. ¶ 4. On Friday, October 18, 2024, Lurie "received notice from my former office location that there was mail that was delivered"—but Lurie wasn't told that this "mail" included "service of process documents." *Id.* ¶ 5. Lurie retrieved the mail on Sunday, October 20, 2024, and "began a review of the documentation that was in the mail" the next day. *Id.* ¶¶ 6–7. At 8:56 a.m., on October 22, 2024, Lurie "sent an email to Plaintiff's counsel" advising that he "had just received the filings [that had been] sent to another location and signed for by unknown/unauthorized parties" and requested "that Plaintiff's counsel sign a stipulation to extend time to answer so I could retain local counsel." *Id.* ¶ 12. We granted the Plaintiff's motion for default final judgment the same day, *see* Order Granting Motion for Final Default Judgment [ECF No. 17], and entered final judgment on October 23, 2024, *see* Final Judgment [ECF No. 18]. Plaintiff's counsel didn't respond to Lurie's request until after we entered final judgment. *See* Lurie Decl. ¶ 13.

MGS believes that these unique circumstances constitute a "good reason" for not responding to the Plaintiff's lawsuit. After all, Lurie (MGS's counsel) wasn't aware of the lawsuit until October 21, 2024, because MGS's registered agent sent a copy of the summons and complaint to the wrong address. *See* Motion to Vacate at 7. This error was compounded when "an unknown, and definitely unauthorized party" signed for the documents and the Corporation Service Company failed to send an "email of service" to Lurie. Lurie Decl. ¶¶ 9–10. Once Lurie learned about the lawsuit, MGS says,

---

[1] Neither party presents any evidence showing *when* the copy of the summons and complaint was delivered to counsel's former address at 15 Warren Street, Suite 36, Hackensack, NJ 07601. *See generally* Motion to Vacate; Response.

4

he quickly moved to contact Plaintiff's counsel, hire local counsel, "appl[y] for my admission *pro hac vice*," and "defend against [the Plaintiff's] claim[.]" *Id.* ¶¶ 12–18. The Plaintiff has a simple (but compelling) response: All of this could have been avoided if MGS and Mr. Lurie had updated their address with their registered agent. *See* Response at 9–10 ("Defendant's assertion that its Registered Agent forwarded the Summons and Complaint to an outdated address, due to Defendant's failure to update it, does not constitute a "good reason" that would support excusable neglect. . . . [B]oth before and after moving, Defendant never told its Registered Agent of the new address before the Registered Agent forwarded the Summons and Amended Complaint[.]").

At first blush, most of the relevant case law is not in MGS's favor. We agree with the Plaintiff, for instance, that MGS and Mr. Lurie had a duty to provide their registered agent with an updated address—and that their failure to do so cannot constitute excusable neglect. *See Claytor v. Mojo Grill & Catering Co. of Belleview, LLC*, 2015 WL 1538111, at *3 (M.D. Fla. Apr. 7, 2015) (Moody, J.) ("[E]ven if the Court accepted Defendants' explanation that the mail was being left at the previous address, Defendants nevertheless had a duty to provide a forwarding address and to update the address of their registered agent with the State of Florida."). Likewise, MGS can't rely on its own agent's errors (to the extent there were any) to establish excusable neglect. *See Brice v. Mezzano Condo. Ass'n*, 2015 WL 10857399, at *3 (S.D. Fla. Apr. 10, 2015) (Ryskamp, J.) ("If what Mezzano alleges constituted excusable neglect, any company that has a registered agent could avoid a judgment by saying it never received the relevant documents."); *Hensel Phelps Constr. Co. v. Drywall Sys. Inc. of S. Fla.*, 2007 WL 2433839, at *2 (S.D. Fla. Aug. 22, 2007) (Cooke, J.) ("[I]n this matter the Complaint and Summons were properly served upon Drywall Systems' registered agent but Drywall Systems failed to establish sufficient minimum procedural measures to ensure that the process was properly forwarded and/or identified."); *see also Gibbs v. Air Canada*, 810 F.2d 1529, 1537 (11th Cir. 1987) ("Default that is caused by the movant's failure to establish minimum procedural safeguards for determining that action in

5

response to a summons and complaint is being taken does not constitute default through excusable neglect.").

Even so, there is one unique fact in this case that distinguishes it from the precedents we've cited above: MGS alleges that an unknown third-party "signed for the documents and did not notify Defendants of its receipt." Motion to Vacate at 7; *see also* Lurie Decl. ¶ 9 ("It also appeared that an unknown, and definitely unauthorized party (as I had left this office some time before) had signed for same."); Reply at 6 ("Upon the Complaint's forwarding to Defendants' counsel's prior address, an unknown individual by the name of 'Y. Oliver' signed for receipt of same from FedEx, despite not having authority to do so, and they did not notify Defendants of receipt of the Complaint."). MGS couldn't have foreseen this third-party's unauthorized acceptance of the summons and complaint, and that third party's intervention arguably delayed MGS and its agent from realizing that something was wrong. *See, e.g.*, *Pioneer Inv. Servs.*, 507 U.S. at 387 ("There is, of course, a range of possible explanations for a party's failure to comply with a court-ordered filing deadline. At one end of the spectrum, a party may be prevented from complying by forces beyond its control, such as . . . unforeseeable human intervention."); *Carmondy v. MHM Sols.*, 2008 WL 2844038, at *2 (S.D. Fla. July 23, 2008) (Martinez, J.) ("The Defendant's failure to answer the Complaint appears to be due to the clerical errors of a third party, the Defendant's mail courier service. This type of error qualifies as excusable neglect."). So, while MGS is at least partially responsible for the default, we can't ignore the fact that an unaccountable (and unforeseeable) third party shoulders much of the blame. We thus conclude that MGS had a "good reason" for failing to timely appear in this case. *See In re Worldwide Web Sys.*, 328 F.3d at 1295.

The remaining factors also weigh in favor of a finding of excusable neglect. *First*, MGS has pled the existence of a "meritorious defense." "A general denial of the plaintiff's claims contained in an answer or another pleading is not sufficient." *S.E.C. v. Simmons*, 241 F. App'x 660, 664 (11th Cir.

6

2007) (quoting *In re Worldwide Web Sys.*, 328 F.3d at 1296). The defaulting party must instead "make an affirmative showing of a defense that is likely to be successful." *Ibid.* MGS has met this burden. MGS has proffered evidence suggesting that the Plaintiff failed to "perform their end of the contract" and that the contract between the parties was terminated effective March 31, 2024. Motion at 8; *see also* Lurie Decl. ¶ 24 ("Plaintiff failed to meet the criteria required under the Statement of Work in any [way]—including failing to meet staffing and productivity time. This created a major disruption for the Defendant, including lost sales and lack of any real benefit from the service of Plaintiff. In fact, my client advises that some of the staff of Plaintiff were even simply picking up the phone, calling leads, letting it ring, and then hanging up without any answer."); December 18, 2023 Email [ECF No. 22-2] at 8 ("Please find attached Notice of Termination of our services effective March 31, 2023 [sic]. It is with regret we have gotten to this point but we wish the company every success for the new year and beyond."). This evidence, at a minimum, calls into question the damages the Plaintiff is entitled to since it relied on invoices that (mostly) post-date this March 31, 2024, termination date. *See* Order Granting Motion for Final Default Judgment at 5 ("As to damages, the Plaintiff seeks $479,863.20[.] . . . [T]he Plaintiff supports [this] figure[ ] with copies of the unpaid invoices from February 29, 2024, through September 11, 2024[.]" (cleaned up)).

Outsourcing Management responds with its own evidence—what it calls "an elaborate set of subsequent communications between the parties"—purportedly showing that this December 18, 2023, termination date is misleading and that the parties "agreed to continue (i.e., not terminate) the concierge portion of the Service Agreement in SOW 1, including after March 31, 2024." Response at 5–6. But the Plaintiff's contrary evidence merely confirms that there is a legitimate dispute as to who breached the contract first and when this breach occurred. MGS has thus met its burden under Rule 60(b)(1) by alleging the existence of a specific defense that—if true—would result in a favorable outcome (*i.e.*, it has "ma[de] an affirmative showing of a defense that is likely to be successful"). *In re*

7

*Worldwide Sys.*, 328 F.3d at 1296 (quoting *Solaroll Shade & Shutter Corp. v. Bio-Energy Sys., Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)); *cf. Sword v. Dolphin Moving Sys., Inc.*, 2020 WL 42829, at *2 (M.D. Fla. Jan. 3, 2020) (Jung, J.) ("Plaintiffs have alleged willful violations, which Defendants have failed to rebut. No facts were set forth to establish the hours were overtime or the violations were not willful. The defenses are neither 'likely to be successful' nor would they probably change the outcome if the case is reopened."). We are also ever mindful that "[e]ntry of judgment by default . . . should be used only in extreme circumstances" and that "cases [should] be heard on the merits[.]" *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1316–17 (11th Cir. 2002) (cleaned up). We think this admonition rings especially true in cases like ours, where *both* parties have presented facially meritorious claims and defenses.[2]

*Second*, granting the Motion won't prejudice the Plaintiff. The undisputed facts are that Lurie contacted Plaintiff's counsel for the first time hours *before* we granted the Plaintiff's motion for final default judgment on October 22, 2024. *See* Lurie Decl. ¶ 12. MGS then appeared in the case and filed its motion to vacate less than two weeks after we entered final judgment. *See* Motion at 5. Courts in our Circuit have repeatedly held that such a short delay—especially in the case's early stages—does not prejudice the non-defaulting party. *See, e.g., Perez v. Fla. Millenium Invs., LLC*, 2015 WL 13239312, at *2 (S.D. Fla. July 8, 2015) (Bloom, J.) ("Mere delay in the litigation, especially given the early stages of this case (prior to entry of a scheduling order or commencement of discovery), does not constitute prejudice to Plaintiff for present purposes." (citing *Conn. State Dental Ass'n*, 591 F.3d at 1357)); *Cardona v. C&C Prods., Inc.*, 2016 WL 11734753, at *3 (S.D. Fla. Oct. 19, 2016) (Altonaga, J.) ("In this case, there is little to no prejudice in vacating the Final Default Judgment. Defendants' default occurred

---

[2] The Plaintiff also asks us to deny the Motion because "no defense offered in the Motion addresses or would otherwise upend[s] the claims for account stated and unjust enrichment in Counts II and III of the Complaint[.]" Response at 8. This is silly. We didn't grant final judgment on Counts II and III, so there was no need for MGS to present a defense to those claims. *See* Order Granting Final Default Judgment at 6 ("Counts II and III of the Amended Complaint are hereby DISMISSED.").

during the infancy of the case, and Defendants moved to vacate within three weeks of entry of the Final Default Judgment."); *YHB Mgmt. Corp. v. Fountain Bleau Cap., LLC*, 2022 WL 4657663, at *2 (Sept. 30, 2022) (Land, J.) ("As soon as he realized his mistake, Whaling set about fixing it, and Defendants filed their motion to set aside only two weeks after the default judgment was entered. It was a short delay, there is no prejudice to Plaintiff based on a simple delay or being required to prove its case on the merits[.]"); *but see Am. Credit Acceptance, LLC v. Magic Auto Sales Corp.*, 2019 WL 3940560, at *3 (S.D. Fla. Aug. 21, 2019) (Moreno, J.) ("Here, Plaintiff diligently litigated its case against both Defendants, in an effort to recover a judgment on accounts that have been in default for [more than three weeks]."). Since there was minimal delay between the entry of final judgment and MGS's motion to vacate that judgment, we find that the Plaintiff will not suffer prejudice if we grant the Motion to Vacate.

Accordingly, we **ORDER and ADJUGE** as follows:

1. The Defendant's Motion to Vacate Default Judgment [ECF No. 22] is **GRANTED**.
2. The Final Judgment [ECF No. 18], the Order Granting Final Judgment [ECF No. 17], and the Clerk's Entry of Default [ECF No. 13] are hereby **VACATED**.
3. The Defendant shall file its answer or responsive pleading to the Amended Complaint [ECF No. 4] by **December 16, 2024**.
4. The parties are directed to prepare and file a joint scheduling report, as required by S.D. Fla. L.R. 16.1(b)(2), by **December 16, 2024**. In addition, by **December 16, 2024**, the parties, including governmental parties, must file certificates of interested parties and corporate disclosure statements that contain a complete list of persons, associated persons, firms, partnerships, or corporations that have a financial interest in the outcome of this case, including subsidiaries, conglomerates, affiliates, parent corporations, and other identifiable legal entities related to a party. Throughout the pendency of the action, the

parties are under a continuing obligation to amend, correct, and update the certificates.

**DONE AND ORDERED** in the Southern District of Florida on December 2, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record